**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

GLADYS MARRERO-SAEZ

   Plaintiff

           v.                              Civil No. 09-1499 (SEC)

MUNICIPALITY OF AIBONITO, ET AL

   Defendants

**OPINION AND ORDER**

Pending before the Court is Defendants William Alicea-Perez ("Alicea"), Sandra E. Rivera-Santos ("Rivera"), Jorge Santos-Ortiz ("Santos") and Lisandra Maldonado's[1] ("Maldonado") (collectively "Defendants") Motion for Summary Judgment (Docket # 39), and Plaintiff Gladys Marrero-Saez's ("Plaintiff" or "Marrero") opposition thereto (Docket # 43 & 44). After carefully considering the filings and the applicable law, Defendants' motion is **GRANTED**.

**Procedural Background**

On June 3, 2009, Plaintiff filed the present suit against Defendants in their personal and official capacities, and the Municipality of Aibonito, pursuant to Section 1983, alleging violations of her rights under the First Amendment, due process and equal protection[2] clauses of the Constitution of the United States and the Commonwealth of Puerto Rico, and the Commonwealth's Public Service Personnel Law, Law 184 of August 3, 2004. Docket # 1.

---

[1] While Plaintiff refers to Maldonado as "Maldonado-Alvarado," Defendants refer to her as "Maldonado-Acevedo." In order to avoid confusion, this Court will refer to this Plaintiff as "Maldonado."

[2] Plaintiff's due process and equal protection claims were dismissed on November 12, 2009. See Docket # 24.

**CIVIL NO. 09-1499 (SEC)**                                                                                          Page 2

According to Plaintiff, Defendants discriminated against her because of her political affiliations. Specifically, Plaintiff contends that she was subjected to intolerable work conditions which eventually led to her constructive discharge.

On July 12, 2010, Defendants moved for summary judgment, arguing that Plaintiff fails to establish a *prima facie* case of political discrimination insofar as she did not suffer an adverse employment action. Defendants further contend that they have properly asserted a *Mt. Healthy* defense, to wit, that Plaintiff's transfer was due to an urgent service need. In opposition, Plaintiff argues that she was transferred and deprived of her duties solely because of her political affiliation. As to Defendants' alleged *Mt Healthy* defense, Plaintiff avers that there is no evidence that her transfer was due to an urgent service need.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48

**CIVIL NO. 09-1499 (SEC)**                                                                                          Page 3

(1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(citing Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (citing Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

"The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

**Applicable Law and Analysis**

The relevant uncontested facts are as follows.[3] Plaintiff is a member of the Popular Democratic Party ("PDP") since she was sixteen years old. Plaintiffs' Additional Uncontested Facts ("AUF"), ¶ 33.[4] From that time, she attended PDP meetings and assemblies. AUF at 34. Plaintiff further participated in the opening of the PDP club, in the motorcades and other activities. AUF at 35. She was also part of the advance team for the 2008 election campaign for the PDP candidate for mayor of the municipality of Aibonito. AUF at 36. Moreover, Plaintiff was a poll watcher in both primaries and general elections since she was sixteen. AUF at 37 & 38.

Plaintiff started working for the Municipality of Aibonito on February 15, 1997. Defendants' Statement of Uncontested Facts ("SUF"), ¶ 1.[5] On March 1, 2009, co-defendant Santos, Director of Public Works for the Municipality of Aibonito, requested that the Honorable Mayor of Aibonito assign an Administrative Assistant to perform duties in the cemetery. Id. at 13.[6] On April 2, 2009, Maldonado, Director of Human Resources of the Municipality of Aibonito, contacted Plaintiff and informed her that she was being transferred to the cemetery.

---

[3] When opposing Defendants' motion, Plaintiff submitted a plethora of additional facts, instead of including them with her AUF. Local Rule 56c, however, requires that, if the nonmoving party includes any additional facts, such facts must be in a separate section, set forth in separate numbered paragraphs, and supported by a specific record citation. Thus any additional facts provided by Plaintiff when denying or qualifying Defendant's SUF must be disregarded by this Court.

[4] Plaintiff numbered her additional facts starting at #31. For the sake of clarity, this Court will discuss the same in the above referenced numbering sequence. Defendants did not admit or deny Plaintiff's additional facts. As such, they are deemed admitted when properly supported by the record.

[5] Her monthly gross income at the Municipality as Assistant II to the Federal Programs Director was $1,873.00. Id. at 2 & 3.

[6] Santos did not make any appointment as to the employee who would occupy the position at the cementery since he is not the nominating authority at the Municipality of Aibonito. Id. at 14

**CIVIL NO. 09-1499 (SEC)**                                                                 Page 5

Id. at 10. Maldonado gave Plaintiff a letter of transfer stating that Santos had requested an Administrative Assistant II for the cemetery and told Plaintiff that the transfer was due to an urgent need of services at the cemetery. Id. at 10 & 11. Plaintiff was transferred from the Federal Programs Office to the cemetery effective April 6, 2009. Id. at 4. She continued to work as an Administrative Assistant II at the Municipality until June 5, 2009. Id. at 5.[7]

*Section 1983*

The Supreme Court has held that Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. See Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989). In the instant case, Plaintiffs' Section 1983 claims are based on alleged violations of the First Amendment. Personal capacity suits against governmental officials seek to impose personal liability for actions taken by the government official under color of state law. Kentucky v. Graham, 473 U.S. 159, 165 (1985).In order to prove liability under Section 1983, "plaintiffs must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). "While plaintiffs are not held to higher pleading standards in section 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." Marrero v. Molina, 491 F. 3d 1, 10 (1st Cir. 2007). Moreover, when alleging political discrimination under Section 1983, plaintiffs must produce evidence that partisanship was a substantial or motivating factor in the adverse employment action. See Maymi v. P.R. Ports Authority, 515 F.3d 20, 25 (1st Cir. 2008).

---

[7] Thereafter, Plaintiff started working as Executive Director at "Centro Margarita" on June 9, 2009. Id. at 6. Plaintiff's monthly gross income as Executive Director in "Centro Margarita" was $3,000.00. Id. at 7.

**CIVIL NO. 09-1499 (SEC)**                                                                                           Page 6

*Political Discrimination*

The First Circuit has held that "[t]he right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment." Carrasquillo v. Puerto Rico, 494 F.3d 1, 4 (1st Cir. 2007) (citing Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973)). As a general rule, "the First Amendment protects associational rights... [and] the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F. 3d 26, 28 (1st Cir. 2004). Since public employees "generally enjoy protection from adverse employment actions based on their political affiliations," this Circuit has held that "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Id.; see also Maymi, 515 F.3d at 25; Carrasquillo, 494 F.3d at 4 (citing Branti v. Finkel, 445 U.S. 507, 517-19 (1980)). This protection extends to career employees, trust employees, transitory employees, and independent contractors. Martinez-Baez v. Rey-Hernandez, 394 F. Supp. 2d 428, 434 (D.P.R. 2005) (citing Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997)); see also O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712 (1996).

The First Amendment's protection against political discrimination also extends to other adverse employment actions, such as demotions, see Marrero, 491 F. 3d 1, and actions short of dismissal; that is, "promotions, transfers and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." Rutan v. Republican Party, 497 U.S. 62, 75 (1990); Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 767 (1st Cir. 2010). Furthermore, it "includes changes in employment, which, although not as extreme as dismissal, result in working conditions 'unreasonably inferior' to the norm for the position at issue." Carrasquillo, 494 F.3d at 4 (citations omitted);

**CIVIL NO. 09-1499 (SEC)**                                                              Page 7

Rodriguez-Garcia, 610 F.3d at 767. Thus the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests- especially his interest in freedom of speech[; for] if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to produce a result which it could not command directly." Rutan, 497 U.S. at 72.

It is well-settled that political discrimination claims must be reviewed through a burden-shifting scheme: the plaintiff must first show that "he engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision." Mt. Healthy v. Doyle, 429 U.S. 274, 287 (1977) (superseded on different grounds); Carrasquillo, 494 F.3d at 4; Padilla v. Rodríguez, 212 F. 2d 69, 74 (1st Cir. 2000). On this issue, the First Circuit has held that in order to establish a *prima facie* case of political discrimination, a plaintiff must "make four showings": (1) that the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) there is a challenged employment action; and (4) there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in defendant's decision. Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006) (internal citation and quotation omitted); see also Monfort-Rodriguez v. Rey-Hernandez, 599 F. Supp. 2d 127, 168 (D.P.R. 2008). Thus, a plaintiff must essentially demonstrate "that party affiliation was a substantial or motivating factor behind a challenged employment action." Marrero, 491 F. 3d at 9.

To show that political affiliation was a substantial or motivating factor behind an adverse employment action, a plaintiff cannot rest on mere juxtaposition of his protected right with unfair treatment. Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000). In

**CIVIL NO. 09-1499 (SEC)**                                                                                         Page 8

determining the sufficiency of Plaintiffs' evidence on this issue, the First Circuit has held that although a highly charged political atmosphere alone cannot support an inference of discriminatory animus, when coupled with "the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus." Rodríguez-Ríos v. Cordero, 138 F. 3d 22, 24 (1st Cir. 1998). Notwithstanding, political discrimination claims always require "that defendants have knowledge of the plaintiffs['] political affiliation." Martinez-Baez, 394 F. Supp. 2d at 434; Hatfield-Bermudez v. Aldanondo-Rivera, 496 F.3d 51, 61-62 (1st Cir. 2007). Specifically, "[a] plaintiff does not meet the burden of showing simply by alleging that defendants must have been aware of his political affiliation simply because he is a well-known supporter of that party, has political propaganda on his house or car, held trust positions when that party was in power, or because he suffered an adverse employment action shortly after a change in administration." Rodriguez-Diaz v. Marrero-Recio, No. 10-1317, slip op. at 14 (D.P.R. Oct. 20, 2010)(citing Gonzalez de Blasini v. Family Dept., 377 F.3d 81, 85-86 (1st Cir. 2004)).

When the plaintiff satisfies the *prima facie* case, the burden then shifts to the defendant to show that "it would have taken the same action regardless of the plaintiff's political beliefs- commonly referred to as the Mt. Healthy defense." Padilla, 212 F. 2d at 74; Carrasquillo, 494 F.3d at 4; Torres-Martinez v. P.R. Dept. Of Corrections, 485 F.3d 19, 23 (1st Cir. 2007). That is, the defendants must "demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." Velez-Rivera v Agosto-Alicea, 437 F.3d 145, 152 (1st Cir. 2006) (citing Mt. Healthy, 429 U.S. at 286-87). If the defendant makes such a showing, the plaintiff may attempt to discredit the tendered nondiscriminatory reason with either direct or circumstantial evidence. Id. at 153.

In the present case, there is no controversy as to the fact that Plaintiff and Defendants

belong to opposing political affiliations. Thus this Court's analysis hinges on whether Defendants knew about Plaintiff's opposing political affiliation, whether there is a challenged employment action and whether there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in Defendants' decision.

*Plaintiff's political affiliation*

Although Defendants do not expressly address whether they knew Plaintiff's political affiliation, Plaintiff must still "plead enough for a necessary inference to be reasonably drawn." Marrero-Gutierrez v. Molina, 491 F.3d 1, 9 (1st Cir. 2007). In showing that Defendants knew about her political affiliation, Plaintiff provides the following facts: that she actively participated in PDP activities, meetings, poll stations and the PDP Mayor's 2008 campaign; that Alicea knew Plaintiff for several years because he was a friend of Plaintiff's son's deceased father (AUF at 40); that Maldonado knew her political affiliation (AUF at 50), and that her political affiliation was well known at the Municipality given that she was an active member of the PDP (AUF at 42).

As previously stated, a plaintiff faced with a motion for summary judgment may not rest on conclusory allegations without more. She must produce specific facts sufficient to limn a trial-worthy issue in order to survive dismissal at this stage. In addressing the sufficiency of political discrimination claims, the First Circuit provides that "[a] prima facie case is not made out when there is no evidence that an actor was even aware of the plaintiff's political affiliation." Hatfield-Bermudez, 496 F.3d at 61. Moreover, it is well-settled that general allegations alone such as that Plaintiff's political affiliation was well known by Defendants, are conclusory and thus insufficient to show that Defendants knew about her political affiliations. Jimenez-Gonzalez v. Alvarez-Rubio, 683 F. Supp. 2d 177, 183-84 (D.P.R. 2010); Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d 202, 215 (D.P.R. 2009). Similarly, a

plaintiff's general allegation that she is an active member of a political party fails to show that defendants were aware of his political affiliation. Rivera-Feliciano v. State Ins. Fund Corp., 652 F. Supp. 2d 170, 186 (D.P.R. 2009). As previously explained, even the fact that a plaintiff is a well-known supporter of that party, has political propaganda on his house or car, held trust positions when that party was in power, or suffered an adverse employment action shortly after a change in administration, are insufficient to show that defendants must have been aware of his political affiliation. Rodriguez-Diaz, No. 10-1317, slip op. at 14; see also Gonzalez-Di Blasini, 377 F.3d at 85-86 (affirming the district court's entry of summary judgment for defendants, upon finding that the fact that plaintiff was a well-known supporter of the opposing party, had held previous trust positions under said party's administration, and that was allegedly demoted after they assumed power, was insufficient to show that defendants knew about her political affiliation, and that said affiliation was the motivating factor for her demotion); Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 48 (1st Cir. 2004) (finding that a PDP Mayor's statement that he intended to "rid the town of NPP activists" was not enough to show that political affiliation was motive for adverse employment action); Acevedo Díaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993) (holding that the fact that plaintiffs were conspicuous targets for discriminatory employment action by defendants because they prominently supported a former mayor is not enough to show motive). Furthermore, this Circuit has held that even when a plaintiff is a well-known supporter of a different political party, this may not suffice to show that a challenged employment action is premised on political affiliation. Gonzalez-De Blasini., 377 F.3d at 85-86.

Similarly, this district recently granted a municipality defendant's motion for summary judgment, holding that "none of the plaintiffs, except [a specified few] offer[ed] evidence that [defendant] had first-hand knowledge of their affiliations" with the opposing party. Díaz-Ortiz

**CIVIL NO. 09-1499 (SEC)**                                                                                     Page 11

v. Díaz-Rivera, 611 F. Supp. 2d 134, 144 (D.P.R. 2009)(citations omitted); see also Roman v. Delgado-Altieri, 390 F. Supp. 2d 94, 102 (D.P.R. 2005)(citing Aviles-Martinez v. Monroig, 963 F.2d 2, 5, (1st Cir. 1992)). The court further noted that "even when circumstantial evidence may be sufficient to support a finding of political discrimination, plaintiffs must still make a fact-specific showing that a causal connection exists between the adverse employment action and their political affiliation." Id. (citations omitted); see also Monfort-Rodriguez v. Rey-Hernandez, 599 F. Supp. 2d 127 (D.P.R. 2008).

Therefore, the fact that Plaintiff was a municipal employee under the previous administration does not constitute evidence of her political affiliation. Hatfield-Bermudez, 496 F.3d at 62. Also, Plaintiff cannot prove that Defendants had knowledge of her political affiliation merely through testimony of having been seen, or, for that matter, met during routine campaign activity participation, having been visited by the now incumbent while said defendant was a candidate to the position he now holds, or through knowledge of third parties. Roman, 390 F. Supp. 2d at 102-03. Additionally, mere temporal proximity between an adverse employment action and a change of administration is insufficient to establish discriminatory animus. Acevedo-Díaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993).

This Court notes that although in Gonzalez-De Blasini, 377 F.3d 81, 86, the Court recognized that a *prima facie* case for political discrimination may be built on circumstantial evidence,[8] Plaintiff in this case, however, has not "generated the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations" regarding each Defendants' knowledge of her political affiliation. Id. at 86.

Although Plaintiff insists that her political affiliation was well known at the Municipality

---

[8] That is, a plaintiff "need not produce direct evidence of discriminatory treatment (a so-called 'smoking gun') to establish a prima facie case of politically discriminatory demotion [or termination]." Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 26 (1st Cir. 2006).

**CIVIL NO. 09-1499 (SEC)** Page 12

given that she openly was a member of the PDP (AUF at 42), as discussed previously, general allegations regarding her participation in PDP related activities and Defendants' alleged knowledge of the same is insufficient to survive dismissal at this stage. Similarly, the fact that some of the Defendants knew Plaintiff personally or her relatives does not equate knowing her political affiliation.[9] Plaintiff's propositions on this issue are speculative at best, and fail to satisfy the *prima facie* case standard. Pursuant to the uncontested facts, only Maldonado knew about Plaintiff's political affiliation. AUF at 50. Notwithstanding, as will be discussed shortly, there is no evidence that Maldonado made the decision to transfer Plaintiff or participated in the alleged removal of her duties.

Accordingly, without adequate proof that Defendants knew Plaintiffs' political affiliation, she cannot prove that said factor was a substantial motivating factor for any adverse employment action.

*Adverse employment action*

Notwithstanding the above, this Court further finds that Plaintiff failed to show that she suffered an adverse employment action. Under "short of dismissal" actions, plaintiffs must satisfy a two prong test, that is, they must show that the removal of their duties was motivated by their political affiliation, and that the challenged actions resulted in a work environment "unreasonably inferior" to the norm for the position. Roman v. Delgado-Altieri, 390 F. Supp. 2d 94, 104 (D.P.R. 2005). In analyzing the "unreasonably inferior" prong, courts shall determine whether "the governments's actions are sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party." Id. (citing Agosto-De Feliciano v. Aponte-Roque, 889 F.2d 1209, 1217 (1st Cir. 1989).

---

[9] According to Plaintiff, Alicea knew Plaintiff for several years since he was a friend of Plaintiff's son's deceased father. AUF at 40.

**CIVIL NO. 09-1499 (SEC)**                                                                                                             Page 13

Moreover, when deciding whether a challenged employment action resulting in unreasonably inferior conditions has occurred, "[a]ctual functions of the job, not titles, control, and an official description of job functions is a presumptively reliable basis for determining those functions." Lopez-Quinones v. P.R. Nat. Guard, 526 F.3d at 26 (1st Cir. 2008). Generally, "an employee must show a permanent, or at least sustained, worsening of conditions to reach the threshold of constitutional injury. If, however, a temporary change in duties is so inappropriate as to be demeaning and persists…the severity threshold may be met." Agosto-de-Feliciano, 889 F.2d at1219. On this front, courts may also consider additional factors such as "lost access to telephone and photocopier, poorer office accouterments, worse hours." Id.

Plaintiff's claims against Alicea hinge on the conditions of the workplace when she was transferred, not the transfer itself, since she admits that they had the right to transfer her.  SUF at 25. The uncontested facts regarding the alleged adverse employment action, i.e, the change in the conditions of her workplace, are the following: that Santos requested an Administrative Assistant at the Cemetery; that Maldonado informed Plaintiff that she would be transferred to the cemetery due to urgent need of services requested by Santos; that Santos transferred her to the cemetery and then told her that he requested her, and when she reported there, he left her there and gave her no instructions (id. at 28); that Santos did not give her any instructions once she started working at the cemetery, that she gave Santos a list of the needed materials but she only received a desk that was broken, that he told her that there was no money for a new desk, and was told that she would receive a new desk when it was available.

Plaintiff does not properly show that she was deprived of work space, forced to work worse hours or perform duties beyond the scope of her position. As a matter of fact, while Plaintiff worked at the cemetery, Santos never requested that Plaintiff perform any remodelation or exhumation at the cemetery.  SUF at 15. Furthermore, Plaintiff was never instructed to

**CIVIL NO. 09-1499 (SEC)**                                                                 Page 14

perform any kind of removal of items, changes or painting in the cementery. Id. at 16.

Therefore, Plaintiff fails to satisfy the *prima facie* case's third requirement, to wit, the alleged adverse employment action, as to each Defendant, since she has not indicated how each Co-defendant was a party to the supposed discrimination, *i.e.*, deprivation of her duties. As a matter of fact, Rivera was not involved in Plaintiff's transfer nor the alleged deprivation of her duties. Similarly, Maldonado as Human Resources Director merely informed Plaintiff about her transfer, and did not authorize the same nor was responsible for the assignment of duties at the cemetery. She has also failed to establish conclusively that there was a systematic pattern of behavior after her transfer that would meet the threshold for a constitutional violation.

As a result, this Court finds that the uncontested facts do not show that the removal of her duties was motivated by political animus or that she suffered a sustained worsening of work conditions.

*Causal relationship*

Lastly, even if the Court found that Plaintiff suffered an adverse employment action, there is insufficient proof from which it may reasonably be inferred that her political affiliation played a substantial part behind the same.

In the present case, Plaintiff has not shown that there was a highly charged political environment. Instead, she focuses on the alleged lack of an urgent service need, and Defendants' alleged comments regarding her political affiliations. In order to show that Defendants' actions were motivated by her political affiliation, Plaintiff asserts the following arguments. She claims that Alicea would greet everyone else with a kiss, but not her. SUF at 26. Plaintiff further claims that, at the Federal Programs Office before the transfer to the cementery, Rivera would make her do work plans and then she would not assign her any work, and that she showed a lack of distrust towards her. Id. at 27. Plaintiff also claims that

**CIVIL NO. 09-1499 (SEC)**                                                            Page 15

Maldonado called her about the transfer, and told her that it was an urgent need, but did not tell her anything else. Id. at 29. Maldonado, however, did not make any appointment as to the employee who would occupy the position at the cemetery, since she is not the nominating authority at the Municipality. Id. at 12.

According to Plaintiff, from the date that the PDP lost the general elections in 2008, Plaintiff started looking for a job because she thought that "she would be under attack." SUF at 8 & 9. Tomás Colón, the Administrator of the Municipality, told her that when the New Progressive Party ("NPP") won the elections, the PDP officials had to get ready because they were all going to hell. Id. at 24. Lastly she claims that "they" started referring to the fat ladies in the municipality, saying that they were going to put pressure on them, and send them to the Panamerican Psychiatric Hospital in Cidra. Id. at 17.[10]

Plaintiff, however, has no evidence that Defendants planned to remove her from her position at the Federal Programs Office, even before the NPP won the elections. Id. at 23. Martin Ortiz-Rolón, Secretary of the NPP in the Municipality of Aibonito stated that Rivera worked on the NPP campaign. AUF at 32. Ortiz, however, also stated that he never heard Santos or Rivera make any negative comments about Plaintiff during their NPP meetings nor did he hear Alicea or Maldonado speak about Plaintiff in a negative way or make any negative comments about Plaintiff. SUF at 20-22.[11]

This Court notes that pursuant to Plaintiff's own deposition testimony, none of the Defendants stated that they were going to take her out because she was a member of the PDP.

---

[10] Plaintiff considers herself part of the "fat ladies" because she states that she is not skinny. Id. at 18.

[11] Ortiz's statement that when he learned that Plaintiff was transferred from her position at the Federal Affairs Office to the cemetery, he correlated said transfer to some comments that he heard about withstanding pressure from the new administration (See AUF at 30 & 31) is conclusory and an unsupported speculation which cannot be considered by this Court.

**CIVIL NO. 09-1499 (SEC)** Page 16

Moreover, the comments made by persons that are not defendants to this suit are irrelevant for purposes of the present motion, and their actions cannot be attributable to Defendants. Furthermore, Plaintiff's allegations regarding comments posted on a social network regarding the "fat ladies" bear no relationship to her political affiliation and, even so, she failed to show that said comments referred to her personally or that all defendants participated in said actions. As a matter of fact, Zoraida Santos,[12] Co-defendant Rivera's mother, was the one that referred to Plaintiff as the fat lady, not any of the Defendants. SUF at 19. Also, her claims that Alicea's failure to greet her with a kiss evince his animosity towards her because of her political affiliation are unsupported speculation and unpersuasive on this front. Similarly, the fact that Rivera would request work plans from Plaintiff is insufficient to show discriminatory animus insofar as she also requested the same from all other employees, including NPP members. See SUF at 27.

As a result, this Court finds that Plaintiff has not met the burden of showing that her political affiliation was a substantial or motivating factor for the challenged employment action. Accordingly, Plaintiff has failed to set forth a *prima facie* case of political discrimination. As a result, this Court need not delve into Defendant's *Mt. Healthy* defense arguments. Considering the above, Plaintiff's claims against Defendants in their official capacity are also **DISMISSED with prejudice**. Similarly, absent enough evidence on record that could lead a reasonable jury to hold Defendants liable for political discrimination, Plaintiff's claims on this front against the Municipality of Aibonito suffer the same fate. See Small v. Belfast, 796 F2d. 544, 552 (1st Cir. 1986).[13] Accordingly, Plaintiff's claims against the Municipality are also

---

[12] Zoraida Santos is Co-defendant Rivera's mother.

[13] The Supreme Court has held that Section 1983 applies to municipalities. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978). Plaintiffs claiming municipal liability under Section 1983 must establish a municipal "policy" or "custom" that caused their

**CIVIL NO. 09-1499 (SEC)** Page 17

**DISMISSED with prejudice**.

*Supplemental state law claims*

Having dismissed Plaintiff's federal law claims against Defendants, her state law claims against said Defendants are **DISMISSED without prejudice**. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine sate-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit.").

**Conclusion**

Based on the foregoing, Defendants' motion for summary judgment is **GRANTED**. Accordingly, Plaintiff's federal claims against the Municipality of Aibonito, William Alicea-Perez, Sandra E. Rivera-Santos, Jorge Santos-Ortiz and Lisandra Maldonado are **DISMISSED with prejudice**, and her supplemental state law claims are **DISMISSED without prejudice.**

In San Juan, Puerto Rico, this day 27th day of December, 2010.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

damages. See Board of County Com'rs of Bryant County, Okl. v. Brown, 520 U.S. 397, 403 (1997). A municipality may also be held liable for the acts and decisions of its "duly constituted legislative body or [. . .] officials whose acts may be said to be those of the municipality." Id.; see Monell, 436 U.S at 694. Plaintiff here alleges that the Municipality's employees transferred her absent an urgent service need, thus she objects to the employees' acts and decisions.